UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOHN BASS LINDSAY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-07-68 |
| | § | |
| CITY OF BEEVILLE, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered Defendants City of Beeville, Officer Roy Hinds ("Hinds"), and Detective Robert Reagan Scott's ("Scott") Motion for Summary Judgment in the above-styled action. (D.E. 49.) For the reasons discussed below, Defendant's motion is hereby GRANTED in part and DENIED in part.

**I.      Jurisdiction.**

The Court has federal question jurisdiction over this case pursuant to 28 U.S.C. §1331 because Plaintiff brings suit pursuant to 42 U.S.C. §1983.

**II.     Procedural Background.**

On February 9, 2007, Plaintiff filed his original complaint with the Court, naming as Defendants the City of Beeville, the Beeville Police Department, Officer Roy Hinds, individually and in his official capacity, Detective Robert Reagan Scott, individually and in his official capacity, and the State Bank and Trust. (D.E. 1.) Plaintiff brought claims pursuant to 42 U.S.C. §1983 against Defendants, City of Beeville, Hinds and Scott, based on the "objectively unreasonable arrest and search of Plaintiff in violation of the Fourth Amendment." (Id., ¶ 18.) Plaintiff also brought a negligence claim against Defendant, State Bank and Trust. (Id., ¶ 19.)

On March 9, 2007, and March 20, 2007, the Court dismissed Defendants, State Bank and Trust and Beeville Police Department, with Plaintiff's consent. (D.E. 22; D.E. 24.) On November 2, 2007, Plaintiff filed his first amended complaint with the Court, asserting claims against the remaining Defendants, City of Beeville, Hinds and Scott. (D.E. 47.) Plaintiff maintained his §1983 claim against the City, Hinds and Scott based on the "objectively unreasonable arrest and search of Plaintiff in violation of the Fourth Amendment." (Id., ¶ 18.) Plaintiff also added §1983 claims for the "objectively unreasonable seizure of Plaintiff's property in violation of the Fourth Amendment," and "causing excessive bail set to Plaintiff in violation of the Eighth Amendment." (Id., ¶¶ 19-20.)

On November 15, 2007, Defendants filed the present motion for summary judgment. (D.E. 49.) Defendants argue that (1) Plaintiff may not bring a claim against Defendants under the Eighth Amendment "because the Eighth Amendment protects only those who have been convicted of a crime" and Plaintiff was never more than a "pre-trial detainee," or, in the alternative, because Plaintiff did not follow the required procedure for challenging bail, (2) Defendants, Hinds and Scott, are entitled to qualified immunity with respect to Plaintiff's Fourth Amendment claims, and (3) Plaintiff has not alleged facts sufficient to prevail on his Fourth Amendment claims against the City. (D.E. 49.)

### III. Factual Background.

The undisputed facts are as follows:

On February 11, 2005, Plaintiff attempted to purchase a money order for $271 at the Pantry North convenience store in Beeville, Texas. (D.E. 47, ¶ 9; D.E. 49, ¶¶ 6-7; D.E. 54, ¶¶ 6-7.) Plaintiff used cash, including two $100 bills. (D.E. 47, ¶ 10; D.E. 49, ¶ 7; D.E. 54, ¶ 7.) A Pantry North employee tested the bills with the store's counterfeit detection pen, and the color of

the pen's ink on the bills indicated that the bills were "suspect," *i.e.*, that the bills might be counterfeit. (D.E. 49, ¶ 7, Ex. 3 (Incident Report); D.E. 54, ¶ 7.) The store manager, Leticia Munoz, informed Plaintiff that the bills were "fake" and called the police. (Id.)[1]

Defendant Hinds was dispatched to Pantry North to investigate the situation. (Id.) Upon his arrival, he entered the store and spoke to Ms. Munoz, who identified Plaintiff as the patron who had attempted to pass the suspect bills. (Id.) Hinds then asked Plaintiff to step outside to discuss what had transpired. (D.E. 49, ¶ 8; D.E. 54, ¶ 8.) Plaintiff complied. (Id.) Defendant Hinds requested Plaintiff's identification and performed a pat-down search. (D.E. 49, ¶¶ 8-9; D.E. 54, ¶¶ 8-9.)

Defendant Hinds asked Plaintiff for his home address and he gave an address in Jacksonville, Florida. (D.E. 49, ¶ 9, Ex. 4 (Incident Report), Ex. 5 (Arrest Report); D.E. 54, ¶ 9.) Plaintiff provided a Florida phone number as well. (Id.) Plaintiff's driver's license is from Kansas. (D.E. 49, ¶ 9; D.E. 54, ¶ 9.) Plaintiff was a temporary student at Florida Coastal School of Law at the time of the incident. (D.E. 54, ¶ 9, Ex. 7 (Lindsay Afft.).)

At some point during Plaintiff's conversation with Officer Hinds, Defendant Scott arrived. (D.E. 49, ¶ 10; D.E. 54, ¶ 10.) Defendant Scott informed Plaintiff that the two suspect $100 bills would be seized as evidence and taken to the bank to be tested. (D.E. 49, ¶ 11; D.E. 54, ¶ 11.) Scott advised Plaintiff that he could follow Scott to the bank to see the results of the testing. (Id.) Plaintiff declined to follow Scott and, instead, left the Pantry North in his car traveling southbound on North St. Mary's Street. (D.E. 49, ¶ 12; D.E. 54, ¶ 12.)

Defendant Scott then took the bills to the State Bank and Trust of Beeville for testing. (D.E. 49, ¶ 13; D.E. 54, ¶ 13.) A teller, Johnnie Sachtleben, tested the bills with the bank's

---

[1]   In his summary judgment response, Plaintiff disputes that Ms. Munoz called the $100 bills "counterfeit." (D.E. 54, ¶ 7.) In his complaint, however, he asserts that Ms. Munoz "stated that the bills were 'fake.'" (D.E. 47, ¶ 9.)

counterfeit detection pen, and the marks on both bills indicated that the bills were suspect. (D.E. 49, ¶ 13; D.E. 54, ¶ 13, Ex. 8 (Sachtleben Dep.) at 15:10-14.) Ms. Sachtleben's supervisor, Martha Sauceda, and the Senior Vice President of the Bank, Orlando Vasquez, also examined the bills. (D.E. 49, ¶ 14; D.E. 54, ¶ 14.) They could not state definitively whether or not the bills were authentic. (D.E. 54, ¶ 14, Ex. 24 (Sauceda Dep.) at 11:6-17, Ex. 25 (Vasquez Dep.) at 8:9-15.)

Scott then contacted his supervisor, Lieutenant Joe Trevino, and explained to Trevino what had happened. (D.E. 49, ¶ 15; D.E. 54, ¶ 15.) After speaking with Scott, Lieutenant Trevino contacted Hinds and instructed Hinds to arrest Plaintiff for "forgery for attempting to pass counterfeit bills." (Id.) Hinds located Plaintiff on North St. Mary's Street and made the arrest. (D.E. 49, ¶ 16; D.E. 54, ¶ 16.)

Immediately after the arrest, Hinds searched Plaintiff's pockets and found additional cash. (D.E. 49, ¶ 17, Ex. 3 (Incident Report); D.E. 54, ¶ 17.) The cash was subsequently logged as evidence. (D.E. 49, ¶ 17; D.E. 54, ¶ 17.) Hinds also searched Plaintiff's vehicle. (D.E. 47, ¶ 11.) No additional evidence was collected. (Id.) Hinds then transported Plaintiff to the Beeville Police Department in his patrol car. (D.E. 49, ¶ 19; D.E. 54, ¶ 19.)

Plaintiff was seen by a magistrate judge, and bond was set in the amount of $50,000. (D.E. 49, ¶ 19, Ex. 11 (Magistrate's Warning), Ex. 12 (Bail Bond Statement); D.E. 54, ¶ 19.) Shortly thereafter, Plaintiff made bond and was released. (D.E. 49, ¶ 19; D.E. 54, ¶ 19.)

Defendant Scott forwarded the two $100 bills, as well as additional bills seized during the search of Plaintiff, to the United States Secret Service. (D.E. 49, ¶ 21, Ex. 13 (Scott Afft.), Ex. 16 (Summary of Investigative Activities); D.E. 54, ¶ 21.) On February 10, 2006, Scott received notice from the Secret Service that the bills were genuine. (Id.) As a result, the charges against

Plaintiff were dismissed. (D.E. 49, ¶ 21, Ex. 13; D.E. 54, ¶ 21.) In March 2006, Scott made arrangements with Plaintiff's attorney to have the money returned to Plaintiff. (D.E. 49, ¶ 22; D.E. 54, ¶ 22.)

IV.   **Discussion.**

    A.   **Summary Judgment Standard.**

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). "Ordinarily, on summary judgment, the moving party has the initial burden of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law." Breen v. Tex. A&M Univ., 485 F.3d 325, 331 (5th Cir. 2007) (citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246-47 (5th Cir. 2003)). "If the moving party meets this burden, the burden then shifts to the non-moving party to point to evidence showing that an issue of material fact exists." Breen, 485 F.3d at 331 (citing Rivera, 349 F.3d at 247). "In determining whether summary judgment is appropriate, we view all of the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Breen, 485 F.3d at 331 (citing Coleman v. Sch. Bd. of Richland Parish, 418 F.3d 511, 515-16 (5th Cir. 2005)).

    B.   **Excessive Bail.**

Plaintiff alleges that his Eighth Amendment rights were violated when bail was set at $50,000. Defendants move for summary judgment on this claim arguing that Plaintiff cannot assert a claim under the Eighth Amendment because he was merely a pretrial detainee, and that the Eighth Amendment applies only to those convicted of a crime, and, even if the Eighth

Amendment did apply, Plaintiff did not pursue properly his state court remedies for challenging his bond. Defendants' arguments are without merit.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The parameters under the Eighth Amendment's prohibition of excessive bail, and indeed, the constitutional limitations on the availability of bail in general, were delineated by the Supreme Court in Stack v. Boyle, 342 U.S. 1 (1951). The Stack Court noted:

> ... federal law has unequivocally provided that a person arrested for a non-capital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. (citations omitted). Unless the right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.

Stack, 342 U.S. at 4. (emphasis in original)

The Court further noted, however, that an absolute requirement of release on bail is not necessary to preserve the presumption of innocence:

> The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. (citations omitted). Like the ancient practice of securing oaths of responsible persons to serve as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of the accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is "excessive" under the Eighth Amendment. (citations omitted).
>
> Since the function of bail is limited, the fixing of bail for any individual defendant must be based on standards relevant to the purpose of assuring the presence of that defendant.

Id. at 4-5.

The analysis under the Eighth Amendment's prohibition of excessive bail involves a balancing of the *pretrial detainee's* right to participate fully in the preparation of his case and,

more broadly, to be free from punishment prior to conviction, against the State's interest in ensuring his presence at a later trial. Pugh v. Rainwater, 572 F.2d 1053, 1057 (5th Cir. 1978) (emphasis added). The ultimate inquiry in excessive bail cases is whether the bond amount was necessary to reasonably assure defendant's presence at trial. Id.

Texas law sets forth five factors that the trial court considers in determining what bail is appropriate:

> (1) The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> (2) The power to require bail is not to be so used as to make it an instrument of oppression.
>
> (3) The nature of the offense and the circumstances under which it was committed are to be considered.
>
> (4) The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> (5) The future safety of a victim of the alleged offense and the community shall be considered.

Tex. Code. Crim. P. Ann. art. 17. 15 (Vernon 2005).

Other pertinent factors include family and community ties, work history, length of residence in the county, prior criminal record, conformity with conditions of prior bonds, and any aggravating circumstances of the offense. Ex parte Rubac, 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981); Ex parte Davis, 147 S.W.3d 546, 548 (Tex. App. – Waco 2004, no pet).

In this case, plaintiff argues that defendants violated his constitutional right to a reasonable bail by repeatedly referring to the money as "counterfeit" in the police report when in fact no such determination had been made, thus unjustly inflating the bail amount. (PR at ¶ 19).

In general, a challenge to an excessive bail claim would be brought before the state trial court in which the criminal action is pending; however, in this case, the criminal charges were

dismissed, and *there is* federal law precedent for state pretrial detainees challenging excessive bail as a violation of their federal constitutional rights under §1983.  See e.g. Broussard v. Parish of New Orleans, 318 F.3d 644 (5th Cir. 2003) (pretrial detainees filed §1983 action challenging constitutionality of Louisiana's statutes requiring them to pay fee as requisite to release on bail); Williams v. Farrior, 626 F. Supp. 983 (S.D. Miss. 1986) (pretrial detainee sought damages under §1983 against county sheriff for rejecting proffered surety).  Plaintiff is not precluded from pursuing a claim for excessive bail under §1983.

Defendants' arguments that plaintiff has no Eighth Amendment claim regarding excessive bail under §1983 or that he must exhaust unavailable state court remedies are without merit.  Accordingly, Defendants' motion for summary judgment on Plaintiff's §1983 Eighth Amendment excessive bail claim is DENIED, and Plaintiff shall proceed to trial on this claim.

### C. Plaintiff's Fourth Amendment Claims Against Officer Roy Hinds and Detective Robert Reagan Scott.

Plaintiff claims that Officer Hinds and Detective Scott violated his Fourth Amendment right to be free from an illegal search and seizure when they searched his person and vehicle, and seized his cash.  Defendants argue that they are entitled to qualified immunity.

The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Immunity in this sense means immunity from suit, not merely from liability.  Jackson v. City of Beaumont, 958 F.2d 616, 620 (5th Cir. 1992).  "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law."  Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).  In general, "qualified immunity represents the norm."  Id.

The qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'" Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 624. Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 200 (2001).

### *Step 1 – Constitutional Violation: Illegal Search and Seizure.*

"It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause." United States v. Castro, 166 F.3d 728, 733 (5th Cir. 1999) (citing United States v. Shugart, 117 F.3d 838, 846 (5th Cir. 1997)). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." Id.

Plaintiff claims that Defendants arrested him, searched his person and vehicle, and seized his property without a warrant or probable cause. However, he does not dispute that, prior to his arrest, the two $100 bills giving rise to this controversy were tested using at least two separate counterfeit detection pens, both of which indicated that the bills were suspect. The Court finds that the "totality of the facts and circumstances" in this case were "sufficient for a reasonable

person to conclude that [Plaintiff] … was in the process of committing an offense." Id. Indeed, Defendants did not rush to arrest Plaintiff after the first counterfeit detection pen indicated that the bills were suspect. Rather, Defendants took the bills to the bank to have them examined. While the bank personnel were not able to state definitively whether or not the bills were authentic, they too determined that the bills were suspect, creating a reasonable inference that Plaintiff was attempted to pass counterfeit currency. "'Probable cause does not require proof beyond a reasonable doubt, but only a showing of the *probability* of criminal activity.'" United States v. Jacobs, 125 Fed. Appx. 518, 522 (5th Cir. 2005) (quoting United States v. Daniel, 982 F.2d 146, 151 (5th Cir. 1993)) (emphasis added). The results of the counterfeit detection pen tests demonstrated the requisite "probability" that Plaintiff was committing a crime. Id.

Moreover, Plaintiff's person and vehicle were searched after his arrest, and therefore, the searches are justified as searches "incident to arrest." See United States v. Johnson, 846 F.2d 279, 281 (5th Cir. 1988) (quoting Chimel v. California, 395 U.S. 752, 763 (1969)) ("Under the search incident to arrest scenario, police may search the arrestee's person and 'the area "within his immediate control" …'"); see also United States v. Palmer, 206 Fed. Appx. 357, 359 (5th Cir. 2006) (finding a search of defendant's vehicle after a lawful arrest and after placing defendant in the patrol car a constitutional search incident to arrest); Kelly v. Sheriff's Dep't, 113 Fed. Appx. 582, 584 (5th Cir. 2004) (quoting New York v. Belton, 453 U.S. 454, 460 (1981)) ("when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"). Defendants' search of Plaintiff's vehicle is also justified by the "automobile exception" to the warrant rule. United States v. Fields, 456 F.3d 519, 523 (5th Cir. 2006) (citing Maryland v. Dyson, 527 U.S. 465, 467 (1999)) ("The automobile exception allows police to search a vehicle

if they have probable cause to believe that the vehicle contains contraband."). Probable cause to arrest for "forgery for attempting to pass counterfeit bills" is tantamount to probable cause to search the alleged forger's vehicle for additional counterfeit currency.

### *Step 2 – Objective Reasonableness.*

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). However, when the plaintiff fails to state a constitutional violation, as in this case, the Court need not examine whether the Defendants' actions were reasonable. See Saucier, 533 U.S. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

In this case, Plaintiff has failed to establish the violation of a constitutional right. Therefore, Defendants are entitled to the defense of qualified immunity. Saucier, 533 U.S. at 201.

However, even if Plaintiff could establish a constitutional violation, Defendants' conduct would still be reasonable under clearly established law.

"Qualifed immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Zarnow v. City of Wichita Falls, 500 F.3d 401, 409 (5th Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 343 (1986)). "'That is the balance the courts have struck between compensating wronged individuals for deprivation of constitutional rights and frustrating officials in discharging their duties for fear of personal liability.'" Zarnow, 500 F.3d at 409 (quoting Brown v. Lyford, 243 F.3d 185, 190 (5th Cir.

2001)).  A review of the circumstances surrounding Plaintiff's arrest and the search of Plaintiff's person and vehicle demonstrates that Defendants were not "plainly incompetent," or "knowingly violat[ing] the law."  Zarnow, 500 F.3d at 409.  Defendants had reason to believe, based on the results of the counterfeit detection pen tests, that Plaintiff was attempting to pass counterfeit bills.

> **D.     Plaintiff's Fourth Amendment Claims Against The City of Beeville.**

Defendant, City of Beeville, also moves for summary judgment with respect to Plaintiff's Fourth Amendment claims.  For the reasons set forth below, Defendant's motion is hereby GRANTED.

"In a claim against a municipality under §1983, a plaintiff must demonstrate (1) a municipal policy or custom existed; (2) governmental policy makers actually or constructively knew of its existence; (3) a constitutional violation occurred; and (4) through the municipality's deliberate conduct, the custom or policy was the moving force behind the violation."  Santiago, 232 Fed. Appx. at 384 (citing Meadowbriar Home for Children, Inc. v. G.B. Gunn, 81 F.3d 521, 532 (5th Cir. 1996)).  "It is facially evident that this test cannot be met if there is no underlying constitutional violation."  Rios v. City of Del Rio, 444 F.3d 417, 425-426 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)) ("the fact that Plaintiff's First Amendment rights were not actually infringed exonerates [defendant] from supervisory liability").

As discussed above, Plaintiff has not demonstrated that a violation of his Fourth Amendment rights occurred.  (See supra, section IV(C)(1).)  Thus, Plaintiff cannot prevail on his §1983 claims against the City for such violation.

## V.     Conclusion

Based on the foregoing:

(1)     Defendants' Motion for Summary Judgment with respect to Plaintiff's Eighth Amendment Claims is DENIED;

(2)     Defendant Hinds and Defendant Scott's Motion for Summary Judgment with respect to Plaintiff's Fourth Amendment Claims is GRANTED; and

(3)     Defendant City of Beeville's Motion for Summary Judgment with respect to Plaintiff's Fourth Amendment Claims is GRANTED.

SIGNED and ORDERED this 17th day of January, 2008.

_____
Janis Graham Jack
United States District Judge